```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
                                                                 :
EMPIRE FIRE AND MARINE INSURANCE                                 :
COMPANY,                                                         :
                                                                 :          REPORT AND
                                    Plaintiff,                   :          RECOMMENDATION
                                                                 :
         -against-                                               :          21-CV-5413 (RPK)(PK)
                                                                 :
EDGE AUTO, INC. and EDGE TRUCK, LLC,                             :
                                                                 :
                                    Defendants.                  :
---------------------------------------------------------------- x
```

**Peggy Kuo, United States Magistrate Judge:**

Plaintiff Empire Fire and Marine Insurance Company ("Plaintiff") brought this action against Edge Auto, Inc. and Edge Truck, LLC (together, "Defendants"), alleging breach of contract, unjust enrichment, and account stated arising from insurance contracts between the parties. Before the undersigned on referral from the Honorable Rachel P. Kovner is Plaintiff's Motion for Default Judgment. ("Motion," Dkt. 13.) For the reasons stated below, the undersigned respectfully recommends that the Motion be GRANTED in part and DENIED in part.

## BACKGROUND

### I.   Factual Background

The following facts are taken from the Amended Complaint ("Am. Compl.," Dkt. 7), declarations of Daniel Wilmer dated November 30, 2021 ("First Wilmer Decl.," Dkt. 13-7) and September 8, 2022 ("Second Wilmer Decl.," Dkt. 14), and exhibits attached to those declarations. The facts are accepted as true for purposes of the Motion. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (in light of defendant's default, a court is required to accept all of plaintiff's factual allegations as true and draw all reasonable inferences in its favor).

Plaintiff is an insurance company that issued a rental auto insurance policy to Defendants that

was renewed three times, covering the period from May 1, 2012 to May 1, 2016. Policy No. SF 014552, issued in 2012 (the "2012 Policy," Dkt. 13-9), was in effect from May 1, 2012 to May 1, 2013 (Am. Compl. ¶ 8; First Wilmer Decl. ¶ 4). Policy No. SF 0104633, issued in 2013 (the "2013 Policy," Dkt. 13-10), was in effect May 1, 2013 to May 1, 2014 (Am. Compl. ¶ 10; First Wilmer Decl. ¶ 6). Policy No. RSF 1051405-01, issued in 2014 (the "2014 Policy," Dkt. 13-11), was in effect May 1, 2014 to May 1, 2015 (Am. Compl. ¶ 11; First Wilmer Decl. ¶ 7). Policy No. RSFT 1051405-02, issued in 2015 (the "2015 Policy," Dkt. 13-12), was in effect May 1, 2015 to May 1, 2016 (Am. Compl. ¶ 12; First Wilmer Decl. ¶ 8) (collectively, the "Policies").

In addition, on April 25, 2012, the parties entered into an Unfunded Reimbursement & Claims Handling Agreement ("Agreement," Dkt. 13-13), applicable to claims submitted under the Policies.[1] The Agreement provided that Defendants have a deductible obligation of $10,000 per claim submitted for coverage and that Defendants are responsible for paying claims handling fees of $530 for each claim reported within 60 days after the date of loss ("Regular Fee") and of $750 for each claim reported more than 60 days after the date of loss ("Late Fee" and, together with "Regular Fee," "Claims Handling Fees"). (Am. Compl. ¶¶ 16-18; First Wilmer Decl. ¶¶ 12-14.)

Defendants submitted multiple claims for coverage under the Policies. (Am. Compl. ¶ 15; First Wilmer Decl. ¶ 11.) Pursuant to the Agreement, Plaintiff regularly sent invoices to Defendants for unpaid deductibles and Claims Handling Fees which Defendants were obligated to pay, identifying the claim and charges incurred during the applicable period. (Am. Compl. ¶¶ 19-20; First Wilmer Decl. ¶¶ 15-16.) Defendants paid the invoices until on or about April 2016. (Am. Compl. ¶ 21; First Wilmer Decl. ¶ 17.) Defendants have failed to pay outstanding invoices for certain unpaid deductibles and Claims Handling Fees under each of the Policies. (Am. Comp. ¶¶ 24-25, 27-28, 31-32, 35-36.)

---

[1] The Agreement does not explicitly list the applicable policies (s*ee* Agreement at 1), but the Amended Complaint alleges that it applies to "the 2012 Policy and all extensions and renewals of the 2012 Policy." (Am. Compl. ¶ 9; First Wilmer Aff. ¶ 5.)

Plaintiff submitted copies of the unpaid invoices dated May 3, 2016 through October 31, 2020. (First Wilmer Decl. ¶ 15; *see* Ex. G to First Wilmer Decl., Dkt. 13-14.)

In addition, the 2015 Policy required Defendants to submit monthly reports identifying vehicles covered by the 2015 Policy during its reporting period ("Monthly Reporting Forms"). (Am. Compl. ¶ 37; First Wilmer Decl. ¶ 33; Second Wilmer Decl. ¶ 9; *see* 2015 Policy at 86-87 (all Policy page references are to ECF pagination).) The 2015 Policy provided that earned premiums are to be calculated according to the Monthly Reporting Forms. (Am. Compl. ¶ 38; First Wilmer Decl. ¶ 34; Second Wilmer Decl. ¶ 10; *see* 2015 Policy at 86-87.) An audit of the Monthly Reporting Forms revealed that Defendants underreported vehicles covered by the 2015 Policy and thus underpaid premiums each month. (Am. Compl. ¶ 39; First Wilmer Decl. ¶ 35; Second Wilmer Decl. ¶ 12; *see* Policy Audit.) The correct earned premiums under the 2015 Policy are $287,050. (Am. Compl. ¶ 40; First Wilmer Decl. ¶ 36; Second Wilmer Decl. ¶ 65.) Defendants failed to remit payment for any of the earned premiums under the 2015 Policy. (Am. Compl. ¶ 41; First Wilmer Decl. ¶ 37.)

Plaintiff performed its obligations under the Policies and the Agreement. (Am. Compl. ¶¶ 52, 60, 67.) It has demanded payment of the balance owed by Defendants for the unpaid deductibles, Claims Handling Fees and earned premiums and has attempted to collect on the amount due. (Am. Compl. ¶ 47; First Wilmer Decl. ¶ 43.) Defendants have not paid the balance owed to Plaintiff in the amount of $326,325.35. (First Wilmer Decl. ¶¶ 44-45; *see* Am. Compl. ¶¶ 54, 62, 69, 75, 80.)

## II.   Procedural History

Plaintiff filed the Complaint on September 29, 2021 (Dkt. 1) and the Amended Complaint on October 4, 2021 (Dkt. 7.) Defendant Edge Truck, LLC was served on October 15, 2021, and Defendant Edge Auto, Inc. was served on October 22, 2021. (Affidavits of Service, Exs. B and C to Affirmation of Dennis E. Kadian in Support of Motion for Default Judgment, dated Nov. 30, 2021, "Kadian Aff.," Dkts. 13-3, 13-4.) After Defendants did not answer or respond to the Amended

Complaint, Plaintiff requested a Certificate of Default, which the Clerk of Court entered on November 16, 2021. (Dkts. 11, 12.) Plaintiff filed the Motion on November 30, 2021. (Dkt. 13.)

On September 9, 2022, at the Court's direction, Plaintiff filed a supplemental declaration and exhibits. (Dkt. 14).

### III.     **Default Judgment Standard**

Federal Rule of Civil Procedure 55 governs the procedure that applies in cases where there is a default during the course of litigation. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011). It provides "a 'two-step process' for the entry of judgment against a party who fails to defend …." *Id.* (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). First, when a defendant "has failed to plead or otherwise defend," the Clerk of Court enters the defendant's default. Fed. R. Civ. P. 55(a). Then, the plaintiff must "apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

Failure to answer may constitute a default, as may failure to defend at later stages of litigation. *See* Fed. R. Civ. P. 55. Here, Defendants did not file an answer to the Amended Complaint.

"A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true." *United States v. Myers*, 236 F. Supp. 3d 702, 706 (E.D.N.Y. 2017) (collecting cases). A court must draw all reasonable inferences in the moving party's favor. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). However, "just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010). A court must ensure that (1) jurisdictional requirements are satisfied, *see Mickalis*, 645 F.3d at 125-27, 133; (2) the plaintiff took all the required procedural steps in moving for default judgment, *see* Local Civil Rule 55.2; and (3) the plaintiff's allegations, when accepted as true, establish liability as a matter of law, *see Finkel*, 577 F.3d at 84.

Moreover, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits. *See id.*; *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991).

A court exercises significant discretion in deciding whether to grant a default judgment, including whether the grounds for default are clearly established, and the amount of damages. *See Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999); *GuideOne Specialty Mut. Ins. Co.*, 696 F. Supp. 2d at 208.

## DISCUSSION

### I. Jurisdiction

A court from which default judgment is sought must assure itself that it has subject matter jurisdiction over the action. *See Mickalis,* 645 F.3d at 125-26 (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)). Before entering a default judgment, a court may, but need not, inquire as to whether it has personal jurisdiction over a defaulting defendant. *See id.* at 133 (citing *Sinoying Logistics Pte. Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 & n.7 (2d Cir. 2010)).

#### A. Subject Matter Jurisdiction

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.

Plaintiff is incorporated in Illinois and has its principal place of business in Illinois. (Am. Compl. ¶ 1.) Defendant Edge Auto, Inc. is incorporated in New York and has its principal place of business in New York. (*Id.* ¶ 2.) The sole member of Defendant Edge Truck, LLC, Rudolph Callegari, is a citizen of New York. (*Id.* ¶ 3.) The compensatory damages of $326,325.35 sought by Plaintiff exceed $75,000. (*Id.* ¶¶ 54, 62, 69, 75, 80; First Wilmer Decl. ¶ 45.)

### B. Service on Defendants

Plaintiff properly served Defendants by delivering and leaving a copy of the Summons and Complaint with the New York Secretary of State. *See* N.Y. Bus. Corp. L. § 306(b)(1); Fed. R. Civ. P. 4(h)(1)(B). (Dkts. 13-3, 13-4.)

### C. Personal Jurisdiction

"Serving a summons ... establishes personal jurisdiction over a defendant ... who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (quoting Fed. R. Civ. P. 4(k)(1)(A)). New York State has general jurisdiction over corporations formed under its laws and operating within the state. *See Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018), *R&R adopted*, 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018). Defendants are New York corporations. (Am. Compl. ¶¶ 2, 3.) Accordingly, the Court's exercise of jurisdiction over Defendants is proper.

## II. Procedural Compliance with Local Civil Rules 7.1 and 55.2

As part of the Motion and in compliance with the Local Civil Rules, Plaintiff included a Notice of Motion, (Dkt. 13), *see* Local Civil Rule 7.1(a)(1); a supporting affidavit and exhibits (Kadian Aff.; First Wilmer Decl.; Policies), *see* Local Civil Rule 7.1(a)(3); the Clerk's Certificate of Default (Dkt. 13-6), *see* Local Civil Rule 55.2(b)(1); a copy of the Amended Complaint (Dkt. 13-2), *see* Local Civil Rule 55.2(b)(2); a Proposed Order for Default Judgment (Dkt. 13-15), *see* Local Civil Rule 55.2(b)(3); and proof of mailing of the Motion to Defendants at what appear to be their last known business addresses, listed with the New York Department of State for the purpose of service of process (Certificate of Service, Dkt. 13), *see* Local Civil Rule 55.2(c).

Plaintiff did not submit a memorandum of law, "setting forth the cases and other authorities relied upon in support of the motion," as required by Local Civil Rule 7.1(a)(2). In light of the

relatively straightforward legal issues in this case, the undersigned excuses this deficiency in this case only and relies on the information contained in the First and Second Wilmer Declarations, with the admonition to Plaintiff that all future motions must include the required memorandum of law.

### III. Liability

In the Amended Complaint, Plaintiff asserts claims for breach of contract, unjust enrichment, and account stated, seeking "compensatory damages" on each of those grounds.

#### A. Choice of Law

"In the absence of an express choice of law by the parties, a federal court sitting in diversity must apply the choice-of-law rules of the state in which it sits." *Mem'l Drive Consultants, Inc. v. ONY, Inc.*, 29 F. App'x 56, 62 (2d Cir. 2002) (citing *Guaranty Trust Co. v. York*, 326 U.S. 99, 108-09 (1945); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). "New York courts seek to apply the law of the jurisdiction with the most significant interest in, or relationship to, the dispute." *White v. ABCO Eng'g Corp.*, 221 F.3d 293, 301 (2d Cir. 2000). "In the specific context of insurance contracts, the law to be applied is generally the law of the state which the parties understood to be the location of the insured risk." *Cont'l Cas. Co. v. Contest Promotions NY, LLC*, No. 15-CV-501 (MKB), 2016 WL 1255726, at *2 (E.D.N.Y. Mar. 28, 2016) (quoting *Lapolla Indus., Inc. v. Aspen Specialty Ins. Co.*, 962 F. Supp. 2d 479, 485 (E.D.N.Y. 2013)).

The Policies do not contain an express choice-of-law provision. However, each of the Policies is modified by endorsements so that it complies with New York law. (*See, e.g.*, 2012 Policy at 12 (list of endorsements, including "New York Mandatory Personal Injury Protection Endorsement," "New York Uninsured Motorists Endorsement," "New York Rental Auto Coverage Form," "New York Changes – Cancellation," "New York Amendatory Endorsement," "New York Changes – Cancellation of Premium").) The existence of these provisions indicates that the parties understood New York to be the location of the insured risk. Therefore, the undersigned applies New York law.

7

B.   **Breach of Contract**

Plaintiff alleges breach of contract with regard to the Policies (Count 1), the Agreement (Count 2), and the 2015 Policy (Count 3).

The elements of a breach of contract claim under New York law are "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)).

The parties entered into insurance agreements in which Plaintiff agreed to provide specified coverage, and in exchange Defendants agreed to pay certain deductibles, fees, and premiums. (Am. Compl. ¶¶ 8-18; First Wilmer Decl. ¶¶ 4-14.) Plaintiff performed all its obligations under the contracts. (Am. Compl. ¶¶ 52, 60, 67.)

Pursuant to the terms of the Agreement, Defendants agreed to pay a deductible for each claim submitted for coverage. (Agreement at 1-2.) Defendants were also responsible for Claim Handling Fees, with the amount of each fee owed dependent on whether the associated claim was reported 60 days or less after the date of loss, or more than 60 days after the date of loss. (*Id.* at 3.)

Additionally, pursuant to the 2015 Policy, Defendants agreed to submit monthly reports identifying vehicles covered by the 2015 policy and the reporting period as defined in the 2015 policy. (2015 Policy at 29.) However, an audit of the reports revealed that each month, Defendants underreported covered vehicles. (First Wilmer Decl. ¶ 35.) The reports were used to calculate earned premiums Defendants owed Plaintiff under the 2015 Policy.

Defendants failed to pay deductibles and Claim Handling Fees as required by the 2012 Policy, 2014 Policy, and 2015 Policy; Claim Handling Fees as required by the 2013 Policy; and earned premiums as required by the 2015 Policy. Defendants' breach of these contracts has damaged Plaintiff.

8

Accordingly, Plaintiff has established its breach of contract claims for the unpaid deductibles, Claim Handling Fees, and earned premiums.

C.   **Unjust Enrichment**

In Count Four of the Amended Complaint, Plaintiff asserts a claim for unjust enrichment.

"To prove an unjust enrichment claim under New York law, '[a] plaintiff must show that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered.'" *Eidelman v. Sun Prods. Corp.*, No. 21-1064-cv, 2022 WL 1929250, at *2 (2d Cir. June 6, 2022) (alteration in original) (quoting *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1110 (N.Y. 2011)).

"Unjust enrichment is a 'narrow' doctrine." *ASG &C v. Arch Specialty Ins. Co.*, No. 21-1761-cv, 2022 WL 839805, at *1 (2d Cir. Mar. 22, 2022) (quoting *E.J. Brooks Co. v. Cambridge Sec. Seals*, 105 N.E.3d 441, 455 (N.Y. 2018)). "It is available only in unusual situations when, though the defendant has neither breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Id.* (alterations omitted) (quoting *Corsello v. Verizon New York, Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012)). "Because a claim for unjust enrichment is a quasi-contractual claim, '[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery ... for events arising out of the same subject matter.'" *Id.* (alteration in original) (quoting *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987)); *see also Marshall v. Hyundai Motor Am.*, 51 F. Supp. 2d 474, 485 (S.D.N.Y. 2014) ("'[W]hen a 'matter is controlled by contract,' the plaintiff has no valid claim for unjust enrichment under New York law." (quoting *Goldman v. Metro. Life Ins. Co.*, 841 N.E.2d 742, 746 (N.Y. 2005))).

Because the parties entered into express written contracts – the Policies and the Agreement – which govern Plaintiff's claims (*see* Am. Compl. ¶¶ 8-14; Policies; Deductible Agreement), it is limited to recovery on those contracts and may not seek recovery based on an alleged quasi-contract. *See*

9

*ASG &C*, 2022 WL 839805, at *1. Accordingly, Plaintiff has no valid claim for unjust enrichment under New York law, and default judgment cannot be granted on the claim.

Plaintiff's unjust enrichment claim also fails because it is duplicative of Plaintiff's breach of contract claims. A party cannot be granted relief on duplicative claims. *See Conway v. Icahn & Co.*, 16 F.3d 504, 511 (2d Cir. 1994) ("Where a plaintiff seeks recovery for the same damages under different legal theories, only a single recovery is allowed."). Claims are duplicative "if they 'arise from the same facts … and do not allege distinct damages.'" *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) (quoting *Sitar v. Sitar*, 854 N.Y.S.2d 536, 538-39 (N.Y. App. Div. 2008)).

Plaintiff's unjust enrichment claim arises from the same facts and seeks the same relief as its breach of contract claims and, thus, is duplicative of those claims. (*See* Am. Compl. ¶¶ 8-15, 47, 71-72, 74-75 (allegations) & at 7-9 (*ad damnum* clauses).) Accordingly, default judgment cannot be granted on the claim. *See BASF Corp. v. Prime Auto Collision Inc.*, No. 20-CV-4797 (NGG)(RLM), 2022 WL 704127, at *6 (E.D.N.Y. Mar. 9, 2022) (collecting cases denying, or recommending denial of, motion for default judgment as to unjust enrichment claim because duplicative of breach of contract claim).

### D.     Account Stated

In Count Five of the Amended Complaint, Plaintiff asserts a claim for Account Stated.

An account stated is an express or implied "agreement between parties to an account based on prior transactions between them with respect to the correctness of the account items and balance due." *Yiwu Lizhisha Accessories Co. v. Jjamz, Inc.*, 336 F. Supp. 3d 179, 183 (S.D.N.Y. 2018), *R&R adopted*, 2019 WL 2763841 (S.D.N.Y. July 2, 2019) (quoting *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 216 (S.D.N.Y. 2007)). An account stated claim requires a showing that "(1) an account was presented; (2) it was accepted as correct; and (3) [the] debtor promised to pay the amount stated." *Id.* (alteration in original) (quoting *Camacho Mauro Mulholland LLP v. Ocean Risk Retention Grp, Inc.*, No. 09-CV-9114, 2010 WL 2159200, at *2 (S.D.N.Y. May 26, 2010)).

10

Plaintiff's account stated claim fails because it, too, is duplicative of Plaintiff's breach of contract claims. As discussed, a party cannot be granted relief on duplicative claims, which are claims that arise from the same facts and do not allege distinct damages. *See Conway*, 16 F.3d at 511; *NetJets Aviation*, 537 F.3d at 175. Courts routinely dismiss account stated claims when they are based on the same facts, and would result in the same relief, as breach of contract claims. *See, e.g.*, *Arch Specialty Ins. Co. v. Apco Indus., Inc.*, No. 18-CV-4041 (ENV)(SJB), 2020 WL 6581000, at *5 (E.D.N.Y. Oct. 5, 2020) (denying account stated claim where "[plaintiff's] … account stated claims arise from the same facts as its breach of contract claim: [plaintiff] provided insurance coverage to [defendant] pursuant to an insurance contract, and [defendant] refused to pay according to the contract's terms"); *Arch Specialty Ins. Co. v. L&L Interior Contracting Servs. Corp.*, No. 18-CV-04175 (JMA)(AKT), 2019 WL 5394502, at *1 (E.D.N.Y. Oct. 22, 2019) ("Plaintiff cannot establish defendant's liability for the account stated claim. Because both counts arise from the same allegations that defendant failed to pay monies owed, plaintiff's claim for account stated is precluded by the default judgment on its breach of contract claim."); *see also Arch Specialty Ins. Co. v. Sealmax Glass Sys., Inc.*, No. 16-CV-1409 (PKC)(SMG), 2017 WL 11505249, at *4 (E.D.N.Y. Feb. 15, 2017) (collecting cases).

Because Plaintiff's account stated claim is duplicative of its breach of contract claims (*see* Am. Compl. ¶¶ 76, 80 (allegations) & at 7-8, 10 (*ad damnum* clauses)), default judgment cannot be granted on the claim.

### IV. <u>Damages</u>

#### A. Deductibles, Claims Handling Fees, Earned Premiums

"It is a fundamental principle of contract law that an award of damages should place a plaintiff in the same position as that party would have been if the contract had not been breached." *Apco Indus.*, 2020 WL 6581000, at *6 (quoting *Rich-Haven Motor Sales, Inc. v. Nat'l Bank*, 558 N.Y.S.2d 91, 92 (N.Y. App. Div. 1990)). Plaintiff has provided sufficient evidence to support its damages with respect

to the deductibles, Claims Handling Fees, and earned premiums. (*See* Invoices.)

The following chart sets forth the unpaid amounts owed pursuant to the Agreement:

| Amounts Due Under the Agreement | | |
|---|---|---|
| | Losses within the deductible limit | Claims Handling Fees |
| 2012 Policy (First Wilmer Decl. ¶¶ 18-19) | $3,665.42 | $530.00 |
| 2013 Policy (First Wilmer Decl. ¶ 22) | $0 | $1,590.00 |
| 2014 Policy (First Wilmer Decl. ¶¶ 25-26) | $7,978.67 | $2,560.00 |
| 2015 Policy (First Wilmer Decl. ¶¶ 29-30) | $88,483.25 | $10,200.00 |
| Total: | $100,127.34 | $14,880.00 |

The following table sets forth the unpaid premiums owed under the 2015 Policy:

| Premiums Due Under 2015 Policy | | | | | | |
|---|---|---|---|---|---|---|
| | Vehicles Reported on Monthly Reporting Forms (Dkts. 14-3 to 14-14) | Vehicles Covered Per Policy Audit (Dkt.14-16) | Per Vehicle Premium Amount (Dkt. 13-12 at.ECF p. 29) | Premiums Owed | Premiums Paid | Premiums Due |
| May 2015 | 359 | 457[2] | $134 | $61,238 | $48,106 | $13,132 |
| June 2015 | 414 | 540 | $134 | $72,360 | $55,576 | $16,884 |
| July 2015 | 443 | 549 | $134 | $73,566 | $59,362 | $14,204 |
| August 2015 | 447 | 549 | $134 | $73,566 | $63,918 | $8,308 |
| September 2015 | 443 | 549 | $134 | $73,566 | $59,362 | $14,204 |
| October 2015 | 450 | 522 | $134 | $69,948 | $60,300 | $9,648 |
| November 2015 | 391 | 484 | $134 | $64,856 | $52,394 | $12,462 |
| December 2015 | 119 | 403 | $134 | $54,002 | $15,946 | $35,056 |

---

[2] Although the May 2015 Monthly Reporting Form states that there were a total of 475 vehicles (May 2015 Monthly Report Form at ECF p. 17), the Second Wilmer Declaration states that "[t]he Fleet List for May 2015 Form identified 457 vehicles." (Second Wilmer Decl. ¶ 15.) Plaintiff's calculation of premiums due also appear to rely on 457 vehicles. Accordingly, the undersigned uses 457 as the number of vehicles

12

| January 2016 | 105 | 418 | $134 | $56,012 | $14,070 | $41,942 |
| --- | --- | --- | --- | --- | --- | --- |
| February 2016 | 105 | 418 | $134 | $56,012 | $14,070 | $41,942 |
| March 2016 | 181 | 412 | $134 | $55,208 | $24,254 | $30,954 |
| April 2016 | 194 | 465 | $134 | $62,310 | $25,996 | $36,314 |
| | | | | | Total: | $287,050 |
| | | | | | Deposit applied (Dkt. 14-15): | -$62,326 |
| | | | | | Total Premiums Due: | $211,318 |

Plaintiff has established that it is owed $115,007.35 in deductibles and Claims Handling Fees, and $211,318 in earned premiums, a total of $326,325.35.[3] (Am. Compl. ¶ 47; First Wilmer Decl. ¶ 43.) Accordingly, the undersigned respectfully recommends that Plaintiff be awarded **$326,325.35** for its breach of contract claims.

**B.     Costs**

Federal Rule of Civil Procedure 54(d) provides for an award of costs to the prevailing party, absent a statute, rule, or court order that provides otherwise. "The fee applicant bears the burden of adequately documenting and itemizing the costs requested." *Monge v. Glen Cove Mansion Hosp., LLC*, No. 18-CV-7229 (SJF)(SIL), 2020 WL 1666460, at *9 (E.D.N.Y. Apr. 2, 2020) (quoting *Volpe v. Nassau County*, No. 12-CV-2416 (JFB)(AKT), 2016 WL 6238525, at *10 (E.D.N.Y. Oct. 24, 2016)).

Plaintiff requests permission to file with the Clerk of Court a notice of taxation of costs pursuant to Fed. R. Civ. P. 54(d). (*See* Kadian Aff. ¶ 12.) The undersigned respectfully recommends that Plaintiff be granted leave to do so.

**C.     Prejudgment and Post-Judgment Interest**

Under New York law, prejudgment interest is available in actions for breach of contract. *See,*

---

[3] In the Amended Complaint and Motion, Plaintiff alleges it is owed $100,127.34 in deductibles and $14,880 in fees, the sum of which is $115,007.34. The Invoices submitted as evidence in support of damages show Plaintiff is owed $115,007.35 in deductibles and fees, the difference of one cent. The undersigned credits the amounts stated in the Invoices.

13

*e.g.*, *Graham v. James*, 144 F.3d 229, 239 (2d Cir. 1998); N.Y. C.P.L.R. § 5001(a). "Interest shall be computed from the earliest ascertainable date the cause of action existed …." N.Y. C.P.L.R. § 5001(b). Contract claims accrue at the time of the breach. *Contest Promotions NY*, 2016 WL 1255726, at *7 (quoting *Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 402 (1993)). The statutory interest rate for prejudgment interest in New York is nine percent per year. N.Y. C.P.L.R. § 5004.

Plaintiff is also entitled to post-judgment interest at the rate set forth in 28 U.S.C. § 1961(a). In federal diversity actions, federal courts must apply the federal rate. *Arch Specialty Ins. Co. v. Kajavi Corp.*, No. 18-CV-4043 (NGG)(SMG), 2019 WL 3719461, at *4 (E.D.N.Y. July 11, 2019) (citing *Cappiello v. ICD Publications, Inc.*, 720 F.3d 109, 112-113 (2d Cir. 2013)), *R&R adopted,* 2019 WL 3717441 (E.D.N.Y. Aug. 7, 2019). Plaintiff requests leave to file "an interest calculation as of the date of the Order granting Default Judgment." (Kadian Aff. ¶ 12.)

The undersigned respectfully recommends that Plaintiff be granted leave to file a motion for prejudgment and post-judgment interest.

**V.     Conclusion**

For the foregoing reasons, the undersigned respectfully recommends that the Motion for Default Judgment be GRANTED as to Plaintiff's breach of contract claims, that judgment be entered awarding Plaintiff $326,325.35, and that Plaintiff be granted leave to file a notice of taxation of costs and a motion for prejudgment and post-judgment interest.

The undersigned respectfully recommends that the Motion be DENIED as to Plaintiff's unjust enrichment and account stated claims.

Any objection to this Report and Recommendation must be filed in writing with the Clerk of Court within fourteen (14) days of service. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to timely file any such objection waives the right to further judicial review of this Report and Recommendation. *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

SO ORDERED:

*Peggy Kuo*
PEGGY KUO
United States Magistrate Judge

Dated:   September 15, 2022
         Brooklyn, New York